The next case on the calendar is Kolbasyuk v. Capital Management Services. May it please the Court, good morning, Your Honors. My name is Levy Huebner, and I'm here for the plaintiff, Kolbasyuk. In this case, and I believe that the two important issues before this Court are did the collector communicate to the consumer the amount of the debt in a meaningful way? And the second prong that I believe is very important is was the standard of review by the District Court appropriate and proper? In Avila, which the District Court adopted and said was applicable to this case, Avila was directing the collector to inform the consumer that it does accruing in interest and did not address 1692G. The language in the letter here, any different from the language in Avila? Of course. How is it different? So no. So in Avila, the specific difference was, in Avila, the problem with Avila and the difference with Avila was Avila was only limited to E. And since Avila was limited to 1692E, so Avila was only regarding whether it was deceptive or not, whether it was in my question is, is there any difference, meaningful difference in the language in the letter that was sent to your client here and the letter in Avila? In Avila, the language in Avila, in Avila adopted, Avila adopted a safe harbor. That wasn't the question in Avila. In Avila, it was a different issue, but Avila adopted a safe harbor. In Avila, it adopted a safe harbor as an idea to avoid the issue, the difficulties. But Avila didn't, Avila didn't address for the 1692G as whether the communication, an initial communication, the difference was, was the letter deceptive or was, and that's in 1692E. In 1692G is whether the letter is communicating appropriately the amount of the debt and in a meaningful way that the consumer can discern it. And that was, that's the difficulty of, of the, of looking at the safe harbor language in Avila. And Carlin specifically laid it out. Carlin said that 1692G requires that the initial letter disclose the amount of the debt. What amount the debt will be at. How is that not disclosed here then? That's a good question. I appreciate that. Because the amount of the debt has to be meaningful to the consumer because we're looking at the least sophisticated consumer. So then the amount of the debt has to be what it will be when they got the letter, what will it be. What's deficient here? What is deficient here about the letter? So the letter here says an amount, but the consumer wouldn't know how he has to pay the debt, how much he has to pay in the future. He wouldn't know how the interest is accruing. Every credit card statement that everybody gets tells you this is your interest and this is what you're going to pay and this is how long it takes you to pay it. It's not complicated for the debt collector to say what you have to do. And that's exactly what Carlin addressed. And unfortunately, in the court below, the plaintiff and the district court were not aware of this court's holding in Taylor. Taylor does not contradict Carlin, does not contradict the bill. It doesn't say they had a different precedent. All it's saying is that in Carlin, the district court, and I apologize, the circuit, in Taylor specifically explained, in Carlin we explained that a collection notice fails to satisfy section 1692G if, and then they quote, Carlin, it omits information allowing the least sophisticated consumer to determine the minimum amount she owes at the time of the notice, what she will need to pay to resolve the debt at any given moment in the future, and an explanation of any fees and interest that will cause. But Carlin was about a situation in which the letter didn't state the amount due as of the date of the letter. It was all about a future payoff date, and that seems to be different than your case. Yes. So that's a good question. But the difference is that here, the consumer was not able to determine the amount due when he received the letter or how much he would have to pay at the future. But the consumer was also told that before they would deposit the check, the consumer would have an opportunity to call and find out the exact amount as of the date. So that's what Carlin and Carlin Right. So the reason that that's not sufficient is that the — it's not a hide-and-seek game where the consumer has to decide what it is, what the debt is based on, and what it's going to be in the future. And the consumer has to have a meaningfully — meaningful communication. That's what specifically Carlin said, and that's what Taylor said that Carlin stood for. And the court below, in addition — and I apologize, but it was in the briefs. It's not my thinking alone, but there's three district court cases that I didn't cite in the brief, but they are in the record. That's Ruth v. Solomon, Pollack v. Kirschenbaum, and Balk v. One Receivables. And I'd be willing to give a frap letter on that just to clarify that. The district court — there's a split in the district court of reviewing Carlin. The last thing that I want to address on was that the Seventh Circuit Miller, which the district court also looked at, in the Seventh Circuit — and that's the problem with Safe Harbor letters. It's not one-size-fits-all. But in Miller, the Seventh Circuit looks at cases differently. In the Seventh Circuit, it's an issue of fact, not an issue of law, a question of law. So, therefore, a Safe Harbor letter couldn't be determined in the Seventh Circuit on a pre-answer motion to dismiss. It would have to be after discovery with full disclosure so that we could understand where we're going, and then on summary judgment. And here, the adoption of that Miller language by the court, the district court below, looking at Miller, I believe that the court was addressing Miller and Avila and conflating the issues. And it's a problem because here it's a question of law, and they're using a question of law standard on something that was adopted by the Seventh Circuit, which is an issue of fact. Thank you. Good morning, Your Honors. May it please the Court. I'm Kirsten Smith. I represent the Appellee Capital Management Services. In our view, this is a simple case. A very simple case. And it's simple because the court has already addressed this issue in Avila. The court held in Avila that when the collection letter accurately states the balance of the debt as of the date of the letter and when interest and fees are continuing to accrue on the debt, discloses that to the consumer, that the debt collector discharges its duties under the FDCPA. Now— Does it make a difference here that we were only speaking about 1692E and not 1692G in Avila, if that's correct? In fact, Avila addresses that specific point. Avila says that 1692G concerns only the disclosures relating to the consumer's need to verify the debt, the amount of the debt, as stated in the letter. 1692E is broader and then expands on those requirements to the extent that the balance is continuing to accrue interest and fees and therefore may increase. So the consumer expanded on the requirement to simply state the amount of the debt as of the date of the letter and said that to the extent that interest and fees are continuing to accrue on the debt, that the debt collector must so state so that the consumer understands that the amount they pay in the future may not be the full amount to satisfy the debt because of the accruing interest and fees. Avila adopted three different safe harbor disclosures that the debt collector could use to satisfy the requirement that the debt collector inform the consumer that when interest and fees are accruing, that the balance of the debt may increase. The first safe harbor that it endorsed in Avila was the Miller safe harbor, and that's exactly the safe harbor that capital management used verbatim in this case on its letter. It endorsed two other safe harbors that are alternatives. One was a safe harbor that provided information about the rate of interest and the amount that the debt would increase over a certain amount of time, maybe daily or monthly or yearly. The third safe harbor that this court endorsed in Avila is a safe harbor that said that if you pay by a certain date, the debt would be discharged in full. Now, importantly, with the Miller— Could you tell me whether—I'm a little puzzled by the notion of a court, an appellate court, setting forth safe harbors rather than deciding the case before it. Is that—is this something that's peculiar to consumer debt cases? I mean, is this a common thing for courts to do? It seems to me to be fairly unusual. It's actually common, and it was actually first started by the Seventh Circuit in 2000 in the Miller case. And the Seventh Circuit specifically explained that if a debt collector accurately states this particular disclosure, the disclosure that capital management used in its collection letter and the one endorsed by the Second Circuit in this case, that they're no reasonable person could conclude that the debt collector has not accurately both informed the consumer of the balance of the debt as of the date of the letter and accurately informed the consumer that the balance may increase. And so it did so in order to prevent unnecessary litigation relating to the case it had already resolved. The court was very clear in both Avila and in Miller that a debt collector need not comply with a safe harbor language that is suggested by the court in either case. A debt collector could formulate its own as long as it substantively meets the requirements of both stating the amount of the debt as of the date of the letter and including a because interest and fees are continuing to accrue. Notably, with the safe harbor language that was used by capital management in this case and that was originally formulated by the Seventh Circuit in Miller and adopted by this court in Avila, there's also an invitation to call so the consumer understands that they and be able to pay off exactly what they owe should they choose to do so. Now, Appellant in this case argues that notwithstanding capital management's use of the exact safe harbor disclosure endorsed by this court in Avila and originally created by the Seventh Circuit in Miller, that nevertheless, the collection letter somehow violated the FDCPA because it didn't include extensive detailed disclosures relating to the principal amount of interest and amount of fees that had already been charged on the debt and explaining or speculating as to any possible interest fees or charges that the consumer may incur in the future. Such information is not required by the statutory text of the FDCPA. It's not required by this court's holding in Avila, and it's not even required by this court's holding in Carlin. Carlin dealt with an entirely different situation, specifically a collection letter that did not state the amount of the debt as of the date of the letter, which is required under 1692G. Instead, what the Carlin letter provided is an estimated future payoff balance, and included in that estimated future payoff balance were estimated and unaccrued unearned fees. And so in that specific case, the court concluded that more information, more detail is required so that the consumer could understand what those estimated unearned future fees and charges are made up of, what they involve. However, that's not the case in this letter, and that's not the case that was before this case in Avila. As in this case in Avila, the court dealt with a letter that did state the amounts of the debt as of the date of the letter. The issue was whether the debt collector also had to disclose that interest and fees are continuing to accrue, causing the balance to potentially increase. And capital management did exactly that. Capital management properly disclosed, using one of the safe harbors endorsed by this court, that not only was the amount of the debt correct as of the date of the letter, but that the balance may change. It did so also by inviting the consumer to call to get their current updated balance information should they wish to make a payment in full on the debt. And I will keep this brief because it sounds like the panel has a very clear understanding on the issues before us. And again, this court has already addressed the issue in Avila. But in closing, I would just like to point out that Appellant argues in his initial brief that this is a case where the debt collector has run amok. In fact, this is exactly the opposite case. This is a case where capital management complied with the FDCPA to a T. Capital management keep running figures all the time so that if somebody calls, they have that day's figure there in order to respond. Yes, and that's exactly why there was that statement in the letter that says that to the extent that the consumer wishes to receive the actual balance, the payoff date as of that date, capital management could give them that information. But this case is actually the opposite of a case where a debt collector has run amok. In fact, the most important part of this case is that capital management complied to a T with the FDCPA and with this court's ruling in Avila. It does not need to comply with the ruling in Carlin, which relates to this specific issue where the debt collector does not state the amount of the debt as of the date of the letter, but instead provides an estimated future balance. That's not the case we have here. This case we have here is identical to Avila. And that's why the district court dismissed this case, and that's why this court should affirm the dismissal. Thank you. First, thank you, Your Honors. I'd like to point out that Plaintiff is not asking for some, for the collection agent to give an extensive communication or speculative communication. Absolutely not. Plaintiff is just asking for a meaningful way to determine what the debt is, when it gets the letter, and how much he'll have to pay in the future without having to further engage with the debt collector. Additionally, I apologize, Your Honor. You had asked about the letter in Miller and the letter in this case. And the letter in Miller, it was a little slightly different to talk about from day to day. But I don't think that was really the differences, not the letters. I think what the difference is, is the amount of the disclosure. And that's the idea about the boilerplate language that sometimes the courts try to create with safe harbor letters, because it's not really one size fits all. It has to go for each different party. In addition to which, specifically, while I could understand that collectors want to try to distinguish Carlin regarding a payoff letter, it's clear that in Carlin, the court said they're aware of their holding in a villa. However, that was limited to 1692E. And so, therefore, a villa is not applicable to a 1692G case. When the collector sends out that first letter, that first letter has to have the amount. And the amount has to be meaningful. It has to be clear, and it has to give the consumer, the least sophisticated consumer, the idea of what that debt is and where he is and how much he's going to have to pay it. It's not complicated. It could show the interest rate or it could show how much he's going to owe per day. And then that's it right there, just like credit card statements. And then the consumer would have it, and they'd be able to move on with their life, decide can they pay now, do they want to pay later, is it accruing at a rate that can they afford it, they want to pay it down. Maybe they have other debts and they want to balance. And those are the people, especially, that are most affected, is that least sophisticated consumer. And the last thing is, and I believe, Your Honor, when you addressed about the boilerplate or about language that the Court's trying to adopt, safe harbor letters, and that's just to say slightly, that issue is also on, did the Court have the standing when that letter, not the standing to hear the case, but the standing to make a hypothetical idea about a boilerplate letter, a safe harbor language, that wasn't really present before the Court with the parties. Thank you very much. I would respectfully request that the District Court decision below be reversed. Thank you both.